AO 106 (Rev. 04/10) Application for a Search Warrant                    2026R00046

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "NEKIMA VALDEZ LEVY ARMSTRONG, ███████" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

Case No. 26-mj-209 (JFD)

## APPLICATION FOR A SEARCH WARRANT

I, Timothy Gerber, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the Northern District of California, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

| | |
|---|---|
| X | evidence of a crime; |
| X | contraband, fruits of crime, or other items illegally possessed; |
| X | property designed for use, intended for use, or used in committing a crime; |
| | a person to be arrested or a person who is unlawfully restrained. |

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 241 | Conspiracy Against Rights |
| Title 18, United States Code, Section 248(a)(2) | Interference with Religious Freedom at Place of Worship |

The application is based on these facts:

**See Affidavit, incorporated here**

  X   Continued on the attached sheet.

_____
*Applicant's Signature*

SUBSCRIBED and SWORN before me by reliable electronic means (FaceTime and USAfx) pursuant to Fed. R. Crim. P. 41(d)(3)

Timothy Gerber, Special Agent
HSI
_____
*Printed Name and Title*

Date: _____

_____
*Judge's Signature*

City and State:  St. Paul, MN

The Honorable John F. Docherty
United States Magistrate Judge
_____
*Printed Name and Title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **"NEKIMA VALDEZ LEVY ARMSTRONG,** ████████" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. 26-mj-209 (JFD)<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Timothy Gerber, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), and have so employed since March of 2025.  In my capacity as a Special Agent, I am responsible for conducting investigations into the numerous federal laws enforced by HSI.  Since March of 2025, I have investigated various criminal violations relating to child exploitation, assaults on federal officers, human rights violations, and immigration violations.

3.     I am a graduate of the Federal Law Enforcement Training Center (FLETC), HSI Special Agent Training Program, having completed training in surveillance, search and arrest warrants, federal laws enforced by HSI, and federal criminal procedures.  Prior to my tenure as a HSI Special Agent, I was employed as a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI), where I investigated various criminal violations relating to the Internal Revenue Code, money laundering, digital currency, and elder exploitation.

4.     This affidavit is based on my personal knowledge, interviews of witnesses, physical surveillance, information received from other law enforcement agents, my experience and training, and the experience of other

2

agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included each and every fact in this investigation known to me and to others.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 248(a)(2) (Interference with Religious Freedom at Place of Worship) have been committed by Nekima Valdez LEVY ARMSTRONG ("ARMSTRONG"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.     Incorporated by reference to support the probable cause in this application are the factual statements detailed in that Indictment filed on January 29, 2026, for Case No. 26-cr-25.

3

8. On January 22, 2026, ARMSTRONG was arrested at the Aloft Hotel in Minneapolis, MN pursuant to a federal arrest warrant issued by the District of Minnesota.

9. After ARMSTRONG was taken into custody, Chauntyll ALLEN ("ALLEN") was also arrested at the Aloft Hotel pursuant to a federal arrest warrant issued by the District of Minnesota. At this time, ARMSTRONG's silver Apple iPhone (SUBJECT DEVICE) was seized from ALLEN's person. ALLEN stated that the SUBJECT DEVICE did not belong to her. ALLEN identified the SUBJECT DEVICE as ARMSTRONG's phone.

10. On January 23, 2026, a search warrant was issued by the District of Minnesota for the SUBJECT DEVICE.

11. On January 29, 2026, in the U.S. District Court of Minnesota, ARMSTRONG was indicted for violations of 18 U.S.C. §§ 241 and 248(a)(2).

12. ARMSTRONG used the SUBJECT DEVICE to communicate with co-conspirators. Eight other co-conspirators were indicted, via the same indictment as ARMSTRONG, for violations of 18 U.S.C. §§ 241 and 248(a)(2).

13. The telephone number associated with the SUBJECT DEVICE is ███████.

4

**BACKGROUND CONCERNING APPLE**[1]

14.     Apple is a United States company that produces the iPhone and iPad, which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

15.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos,

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.  Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users.  It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.  App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

16.  Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often

ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

17.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the internet protocol address ("IP address")

8

used to register and access the account, and other log files that reflect usage of the account.

18.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

19.     Apple also maintains information about the devices associated with an Apple ID.  When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's

9

computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

20.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple.  Records and data associated with third-party apps,

including the instant messaging service WhatsApp, may also be stored on iCloud.

21.    In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

22.    For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

23.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing,

11

such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

24. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

12

26.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.    In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B.    Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

28.     Based on the foregoing, I request that the Court issue the proposed search warrant.

29.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.    The government will execute this warrant by serving the warrant on Apple.

13

Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

30.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until one year from the date of that Order.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify co-conspirators, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Timothy Gerber
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN before me by reliable electronic means
(FaceTime and USAfx) pursuant to Fed. R. Crim. P. 41(d)(3) on February
____, 2026

_____
THE HONORABLE JOHN F. DOCHERTY
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

**Property to Be Searched:**

This warrant applies to information associated with **"Nekima Valdez LEVY ARMSTRONG, █████████"** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

This warrant requires Apple Inc. to provide all information in Attachment B within the possession, custody, or control of Apple Inc., including any emails, records, files, logs, or information that has been deleted but is still available to Apple Inc. through the date of the execution of the search warrant.

i

## ATTACHMENT B

**Particular Things to be Seized:**

## I.    Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic

ii

Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the account for the period January 1, 2026, through January 31, 2026, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account, for the period January 1, 2026, through January 31, 2026, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP

iii

addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, for the period of January 1, 2026, through January 31, 2026, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and biddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers) for the period of January 1, 2026, through January 31, 2026, including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

iv

g.      All records and information regarding locations where the account or devices associated with the account were accessed, during the period January 1, 2026, through January 31, 2026, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

h.      All records pertaining to the types of service used during the period of January 1, 2026, through January 31, 2026;

i.      All geolocation and Precision Finding data during the period of January 1, 2026, through January 31, 2026;

j.      All deleted account information;

k.      Digital media stored in the account, including EXIF and metadata, and photos and videos in their original file format -including all EXIF information;

l.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

m.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

v

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 248(a)(2) (Interference with Religious Freedom at Place of Worship), those violations involving **"Nekima Valdez LEVY ARMSTRONG,** █████**,"** including, for each account or identifier listed on Attachment A, information pertaining to the following matters since January 1, 2026, through January 31, 2026:

a.    Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

b.    Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

c.    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

d.    The identity of the person(s) who communicated with the user ID about matters relating to 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 248(a)(2) (Interference with Religious Freedom at Place of Worship), including records that help reveal their whereabouts.

vi

## CERTIFICATE OF AUTHENTICITY
## OF DOMESTIC RECORDS
## PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11)  AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Apple Inc. ("Apple"), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Apple.  The attached records consist of _____.  I further state that:

a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple, and they were made by Apple as a regular practice; and

b.   such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

1.  the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple in a manner to ensure that they are true duplicates of the original records; and

2.  the process or system is regularly verified by Apple, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
 Date                                                  Signature

2